UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREAVOR THOMAS
HAMMONS,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
_____/

Case No. 21-12933

Stephen J. Murphy, III
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 15)

Plaintiff Treavor Hammons brings this action pursuant to 42 U.S.C. §

405(g), challenging the final decision of Defendant Commissioner of Social

Security ("Commissioner") denying his applications for Disability Insurance

Benefits and Supplemental Security Income under the Social Security Act.  This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 14), the

Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's

reply (ECF No. 15) and the administrative record (ECF No. 9, 13).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's

motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner's

decision.

## I.     DISCUSSION

### A.     Background and Administrative History

Plaintiff alleges his disability began on September 6, 2014, at the age of 27.

(ECF No. 9-2, PageID.55, 65).  On March 18, 2016, he applied for disability

insurance benefits and supplemental security income.  (ECF No. 9-3, PageID.158).

Plaintiff meets the insured status through September 30, 2016.  (ECF No. 9-2,

PageID.57).  In his disability report, he listed ailments which diminished his ability

to work, including: PTSD, learning disability for math and reading comprehension,

facial recognition issues, trouble focusing, involuntary muscle spasms in all limbs,

lower back pain, neck pain, headaches, and anxiety.  (ECF No. 9-6, PageID.355).

His application was initially denied on August 30, 2016.  (ECF No. 9-3,

PageID.158).

The Appeals Council remanded his case to the Commissioner.  Plaintiff

appeared and testified before an Administrative Law Judge ("ALJ") on May 21,

2019.  On June 28, 2019, the ALJ issued an opinion, which determined that

Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No.

9-2).  Plaintiff later submitted a request for review of the hearing decision.  On

June 4, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at

PageID.74-76).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 16, 2021.

### B.    Plaintiff's Medical History

 Plaintiff's arguments on appeal relate solely to his mental impairments. Medical evidence relevant to Plaintiff's arguments is addressed below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 4, 2014, the amended alleged onset date.  (ECF No. 9-2, PageID.57).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: mild scoliosis of the lumbar spine; leg length discrepancy; syrinx at T11; bipolar disorder; dyslexia; avoidant personality disorder; generalized anxiety disorder; learning disorder in math and reading; attention deficit disorder; autistic disorder; and post-traumatic stress disorder. (*Id.*).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id.* at PageID.58-59).  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity

("RFC")[1] and determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) with the following limitations: no foot
> control operation; no climbing of ladders, ropes, or
> scaffolds; no crawling; frequent balancing; occasional
> climbing ramps/stairs, stooping, crouching, and kneeling;
> no exposure to hazardous machinery or unprotected
> heights; simple, routine tasks with no production rate
> pace; few workplace changes; limited to simple, work
> related decisions; no interaction with the public;
> occasional interaction with coworkers and supervisors;
> no work requiring tandem tasks; and jobs which can be
> learned by short demonstration.

(*Id.* at PageID.59-65).  At **Step 4**, the ALJ determined that Plaintiff was unable to

perform any past relevant work.  (*Id.* at PageID.65).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, the ALJ determined there

were existing jobs in significant numbers within the national economy that Plaintiff

could perform, such as sorter, inspector, and assembler.  (*Id.* at PageID.65-66).

The ALJ therefore concluded that Plaintiff had not been under a disability, as

defined in the Social Security Act, from September 6, 2014, the alleged date,

through the date of the decision.

### D.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

E.    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would

6

have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581

F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff makes two arguments on appeal: (1) the ALJ erred by relying on

vocational expert ("VE") testimony without asking whether that testimony

conflicted with the Dictionary of Occupational Titles ("DOT)" and (2) the ALJ

erred in her consideration of the opinion evidence.

#### 1.    VE Testimony

The Commissioner has the burden of proof at Step Five "to show a

significant number of jobs in the economy that accommodate the claimant's

residual functional capacity and vocational profile." *O'Neal v. Comm'r of Soc.

Sec.*, 799 F. App'x 313, 316 (6th Cir. 2020) (cleaned up).  "To meet the burden, the

Commissioner must prove that the claimant has the vocational qualifications to

perform specific jobs and may rely on a vocational expert's testimony in response

to a hypothetical question about the claimant's impairments and abilities." *Id.*

When the VE "provides evidence about the requirements of a job or occupation," the ALJ "has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT."  SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).  VE testimony should be consistent with the DOT.  If there is an apparent conflict, the ALJ is required to elicit a reasonable explanation for the conflict before relying on the VE's testimony.  *Id.* at *2.  The ALJ must resolve the conflict by determining whether the explanation is reasonable and provides a basis for relying on the VE's testimony rather than on the DOT.  *Id.*  The Sixth Circuit recently confirmed that "[a]ll that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict."  *O'Neal*, 799 F. App'x at 317.

Plaintiff initially argued that the ALJ did not ask the VE whether there were any conflicts between her testimony and the DOT.  (ECF No. 14, PageID.1520-21).  The Commissioner points out that the ALJ did ask about conflicts.  (ECF No. 15, PageID.1538).  At the beginning of the VE's testimony, the ALJ said, "[y]our testimony needs to be consistent with the Dictionary of Occupational Titles and its companion publications.  If it's not consistent, would you let me know?"  The VE responded that she would.  (ECF No. 9-2, PageID.118).

In reply, Plaintiff acknowledges that this exchange occurred, but insists that there is a conflict between the VE's testimony and the DOT, and the VE's silence about conflicts in later testimony is not enough to allow the ALJ to rely on the testimony. (ECF No. 16, PageID.1555-56). He challenges the fact that the VE identified jobs he could perform that have a "Specific Vocational Preparation" ("SVP") rating of 2, which requires training beyond a short demonstration, up to and including one month.[3] This contrasts with the hypothetical (and subsequent RFC) posed to the VE which limited Plaintiff to jobs that could be learned by short demonstration. According to Plaintiff, the hypothetical and RFC limitation would preclude SVP 2 jobs. (ECF No. 14, PageID.1521).

The Commissioner argues that the ALJ's opening exchange with the VE regarding potential conflicts was sufficient. She insists the ALJ could rely solely on the VE's testimony where the testimony deviates from job information in the DOT. (ECF No. 15, PageID.1540).

The undersigned agrees with the Commissioner that the ALJ met her burden to inquire with the VE about conflicts in the VE's testimony when she asked the VE to indicate any conflicts. And Plaintiff has pointed to an inconsistency between the jobs the VE identified and the DOT information for those jobs. While

---

[3] The SVP rating system indicates how long it takes a worker to learn his or her job at an average performance level. *Oliver v. Colvin*, 2014 WL 6065849, at *1 n. 3 (E.D. Ky. Nov. 12, 2014).

the ALJ is permitted to "rely solely on the vocational expert's testimony[,]" *Conn v. Sec'y of Health & Hum. Servs.*, 51 F.3d 607, 610 (6th Cir. 1995), the Court need not determine whether the ALJ's questioning was sufficient to address the inconsistency since Plaintiff waived the argument because counsel did not cross-examine the VE about the conflict at the hearing. *Munger v. Comm'r of Soc. Sec.*, 2021 WL 1186494, at *4-5 (E.D. Mich. Mar. 30, 2021) (citing *O'Neal*, 799 F. App'x at 317–18). The Commissioner made this argument, but Plaintiff did not respond in reply. Since Plaintiff waived the argument, the undersigned suggests that error at Step Five, if it exists, is not grounds to remand the case.

### 2.   Opinion Evidence

The ALJ must balance six factors to evaluate every medical opinion. 20 C.F.R. § 404.1527(c). These factors include: (1) whether the source examined the claimant; (2) treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; (6) and any other factors.

The ALJ gave significant weight to Dr. Johnson's August 2016 opinion and Drs. DiGioria and Rosenbaum's January 2017 opinion. Plaintiff does not challenge the weight determinations, but argues that the ALJ erroneously did not incorporate all of the restrictions from these opinions into the RFC.

### a.   Dr. Johnson

Dr. Johnson, a state agency psychologist, issued an opinion on Plaintiff's mental residual functional capacity after reviewing the record compiled before his August 2016 opinion.  Among other things, Dr. Johnson opined that Plaintiff had moderate limitation in interacting with others and should be limited to "brief, superficial interactions w[ith] fellow workers and the public" to accommodate mental impairments.  (ECF No. 9-3, PageID.151).  The ALJ gave Dr. Johnson's opinion significant weight "because it is consistent with the record as a whole." (ECF No. 9-2, PageID.64).  The ALJ also noted that Plaintiff sought treatment for social anxiety, and thus the ALJ limited him to no interaction with the public and only occasional interaction with coworkers and supervisors.  (*Id.*).

Plaintiff says the ALJ's RFC limitation to occasional interaction with coworkers and supervisors conflicts with Dr. Johnson's opinion which limits him to superficial interactions with others.  He argues the ALJ's RFC does not sufficiently account for Dr. Johnson's opinion and the ALJ failed to explain why she did not adopt the "superficial interaction" opinion.  (ECF No. 14, PageID.1524-25).

The Commissioner argues that the ALJ need not adopt every opinion from a physician and need not explain every restriction they adopt.  (ECF No. 15, PageID.1543).  She also contends that *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267 (6th Cir. 2015), held that the restrictions at issues are not inconsistent.

(*Id.* at PageID.1543-44).  The Commissioner notes that the ALJ limited Plaintiff to

"no work requiring tandem tasks."  (ECF No. 9-2, PageID.59).  This, the

Commissioner asserts, sufficiently accounts for a limitation to only superficial

interaction.  (ECF No. 15, PageID.1544-45).

In reply, Plaintiff asserts that *Reeves* is not controlling.  He also argues that

the restriction to no tandem work does not account for the brief, superficial

interactions restriction because the DOT description for small products assembler,

a job identified that Plaintiff could perform, describes the work as a member of an

assembly group working at a bench, passing the unit along to another worker.

(ECF No. 16, PageID.1552).  According to Plaintiff, it is not clear that "no tandem

tasks" would preclude working on a team or a group as a products assembler.

Preliminarily, the Commissioner is correct that the ALJ need not adopt every

portion of an opinion given substantial weight.  *Hedrick v. Berryhill*, 2018 WL

6348759, at *6 (N.D. Ohio Nov. 14, 2018) (finding that the ALJ did not err in

assigning great weight to the state agency doctors' opinions but not adopting or

addressing all of their opined limitations because the ALJ "was not bound by their

opinions or legally required to include their specific limitations in his RFC for

Plaintiff or explain why he did not adopt all of their limitations"); *Smith v. Comm'r

of Soc. Sec.*, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put,

there is no legal requirement for an ALJ to explain each limitation or restriction he

adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight.").

Second, the Commissioner's reliance on *Reeves* is not necessarily misplaced. There, the court upheld a decision by an ALJ who afforded great weight to the opinions of the state agency psychologists. The psychologists opined that the plaintiff was limited to "superficial" contact, but the RFC limited the plaintiff to "occasional" contact with the public. The court determined that the ALJ did not err because an ALJ need not adopt a state agency psychologist's opinion verbatim and that the mental RFC was supported by substantial evidence. 618 F. App'x at 275.

Some courts decline to follow *Reeves* because "superficial" and "occasional" have different vocational meanings, and a limitation to occasional contact does not necessarily encompass a limitation to superficial contact. *See Cooper v. Comm'r of Soc. Sec.*, 2018 WL 6287996, at *4 (S.D. Ohio Dec. 3, 2018) (collecting cases). "'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions." *Lindsey v. Comm'r of Soc. Sec.*, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (citing *Hurley v. Berryhill*, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)).

The Commissioner argues that the ALJ addressed the quality of contact by limiting Plaintiff to no tandem work. The undersigned and other courts agree. *See,*

*e.g.*, *Kearns v. Comm'r of Soc. Sec.*, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020).  The limitation to no tandem tasks addresses the quality of contact with coworkers and supervisors, requiring no more than superficial contact.  Though the ALJ did not expressly limit Plaintiff to no teamwork, this is no reason to remand the decision.

As Plaintiff noted, only one of the three jobs identified by the VE at Step Five required work at a bench with others.  Even assuming the assembler job required work on a team, Plaintiff did not argue that the remaining two jobs required more than superficial contact with coworkers or supervisors.  This leaves the other two jobs available to Plaintiff that do not require more than superficial contact with coworkers and supervisors.  Thus, even if the ALJ erred by not including a limitation to superficial interaction in the RFC, the error is harmless. *See Poe v Comm'r of Soc. Sec.*, 342 F. App'x 149,157-58 (6th Cir. 2009) (an ALJ's erroneous reliance on one of the jobs identified by the VE was harmless because the expert otherwise identified a significant number of jobs in the national economy that the claimant could perform); *Sothen v. Comm'r of Soc. Sec.*, 2014 WL 5823462, at *4 (N.D. Ohio Nov. 10, 2014) ("none of the job descriptions here refer to any interaction with others. Thus, . . . any failure to include a limitation specifying minimal interaction with others was harmless error because including such a limitation on remand would not alter the jobs available.").

And, the ALJ's RFC is supported by other portions of Dr. Johnson's

opinion.  Dr. Johnson opined that Plaintiff was moderately limited in interacting

appropriately with the public (the ALJ limited Plaintiff to no interaction with the

public), "not significantly limited" in the ability to ask questions or request

assistance and to accept instructions and respond appropriately to criticism from

supervisors, and moderately limited in the ability to get along with coworkers or

peers without distracting them.  (ECF No. 9-3, PageID.150).  The ALJ capped

interaction with coworkers and supervisors to only occasional contact with no

tandem work tasks.  The RFC is supported by the opinion.

> b.     Drs. DiGioria and Rosenbaum

The argument about this opinion hinges on word choices in the doctors'

assessment and the ALJ's decision.

Plaintiff presented to psychologists Drs. DiGioria and Rosenbaum on

January 24, 2017, for a vocational psychological evaluation, which was completed

on February 11, 2017.  The doctors provided a list of recommendations after

speaking with Plaintiff and his mother and administering cognitive functioning

testing on Plaintiff.  (ECF No. 9-7).  In making the recommendations, the

psychologists wrote that Plaintiff "may benefit" from several restrictions or

assistance.  For example, they wrote because of memory and processing deficits,

he "may benefit" from being provided written and verbal instruction, and to

accommodate the Autism diagnosis, he "may benefit" from having a set routine

and directions that are clear and concise.  (*Id.* at PageID.999).

In weighing the evaluation, the ALJ wrote,

> In January 2017, Dr. DiGioria and Dr. Rosenbaum,
> vocational psychologists, concluded that the claimant had
> some memory and processing deficits, such that the
> claimant requires both written and verbal instructions, a
> set routine with few changes in his schedule, and clear
> and concise directions.  This assessment is given
> significant weight and is incorporated in the above
> residual functional capacity. Based upon this assessment,
> the claimant will be limited to only simple, routine tasks
> with no production rate pace, few workplace changes,
> simple work related decisions, and jobs which can be
> learned by short demonstration.

(ECF No. 9-2, PageID.65).

In Plaintiff's view, the ALJ's summary of the opinion ignores several other

restrictions from the psychologists, including the need for verbal prompts and

reminders, the use of a mentor for daily guidance with tasks, and the use of a job

coach to help teach organizational skills.  (ECF No. 14, PageID.1525).  The ALJ

failed to discuss these limitations or explain why they were not adopted.  Plaintiff

acknowledges that the "opinions" are "recommendations" and couched in terms of

what Plaintiff may benefit from, but he contends that since the ALJ treated some

recommendations as requirements, it is unclear why the ALJ did not treat all of the

recommendations as requirements.  (*Id.*).  He argues that since the ALJ failed to

explain why the other restrictions were not adopted, the ALJ failed to create an

accurate and logical bridge between the evidence and the decision.  The
Commissioner argues that the ALJ was not required to account for a doctor's
recommendations in the RFC.  (ECF No. 15, PageID.1547-48).

The undersigned views the ALJ's decision as more limited than the parties.
It does not appear that the ALJ gave significant weight to all of the
recommendations.  Rather, the ALJ singled out the doctors' conclusions that
Plaintiff had memory and processing deficits.  To accommodate those deficits, the
doctors stated that Plaintiff may benefit from certain restrictions.  The ALJ stated
this particular specific assessment was given significant weight, not that the entire
assessment was given significant weight.  (ECF No. 9-2, PageID.65).  This,
however, does not explain why the ALJ treated those recommendations as
requirements to accommodate memory and processing deficits, leaving other
recommendations on the table.

The undersigned is not convinced that the fact that the ALJ did not include
or discuss the remaining recommendations renders the decision unsupported by
substantial evidence.  As stated above, the RFC reflects the most a claimant can do.
An ALJ need not adopt a physician's recommendations for optimal functioning in
the workplace.  *See Horinek v. Saul*, 2020 WL 4340987, at *9 (N.D. Ohio July 7,
2020) (citations omitted).  The doctors here stated their limitations as optimal
working conditions for Plaintiff.  Thus, the ALJ was not required to adopt or

address the recommendations because they did not reflect the most Plaintiff could do with his limitations.  In other words, it would not have been legal error for the ALJ to fail completely to address Drs. DiGioria and Rosenbaum's list of recommendations that "may benefit" Plaintiff.  By extension, it is not legal error to address and adopt some recommendations (which works in Plaintiff's favor) and ignore other recommendations.

### G.    Conclusion

Plaintiff has the burden of proof on his statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 14), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum.Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues

but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 23, 2023

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge